ERIC A BECKSTROM Name
PO BOX 10427 Address
Address
Address
EUGENE, OR 97440 City State and Zip
Phone
for [Plaintiff/Defendant]

FILED 26 JUN '26 10:40 USDC-ORE

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

ERIC A. BECKSTROM

Plaintiff(s),

v.

ROD ALLEN BECKSTROM, et al.

Defendant(s).

Case No.: 6:26-cv-00920-AA

FIRST AMMENDMENT TO THE NOTICE OF SUBMISSION OF FORMAL CRIMINAL REFERRAL TO THE FBI AND UNITED STATES ATTORNEY

DOCUMENT TITLE

1. FIRST AMMENDMENT TO NOTICE OF FORMAL CRIMINAL REFERRAL TO THE FBI AND US ATTY.
2. MASTER CASE ADDENDUM B - PHOTOS
3. CERT. OF SERVICE
4. PLAINTIFF'S AFFIDAVIT OF AUTHENTICATION PURSUANT TO FRE 902
5. PLAINTIFF'S EMERGENCY MOTION FOR PROTECTIVE ORDER PURSUANT TO FRCP 26 C
6. NOTICE OF SUPPLEMENTAL RECORD
7. NOTICE OF LODGING OF STATUTORY
8. CERTIFICATE OF SERVICE LODGING
9.

Dated: 6/26/2026

ERIC A. BECKSTROM

Name

9. PROPOSED ORDER GRANTING EMERGENCY PROTECTIVE ORDERS

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**EUGENE DIVISION**
**ERIC A. BECKSTROM,**
Plaintiff,
v.
**ROD ALLEN BECKSTROM, et al.,**
Defendants.
**Case No.: 6:26-cv-00920-AA**
**Date: June 26, 2026**

**FIRST AMENDMENT TO THE NOTICE OF SUBMISSION OF FORMAL CRIMINAL REFERRAL TO THE FEDERAL BUREAU OF INVESTIGATION AND THE UNITED STATES ATTORNEY**

Plaintiff Pro Se, Eric A. Beckstrom, hereby submits this formal Amendment to the Notice to ensure the Court and the Clerk are fully apprised of the expanded statutory grounds and verified physical exhibits delivered in the concurrent public integrity intake to the Federal Bureau of Investigation Portland Division and the United States Attorney's Office for the District of Oregon.

This Amendment introduces critical evidence of systemic, multi-jurisdictional violations intersecting with active Case No. 6:26-cv-00920-AA, specifically regarding:

**1. 18 U.S.C. § 2261A2 Cyberstalking Resulting in Death of Iris Beckstrom**

The criminal referral is updated to document the persistent, multi-year course of electronic conduct executed via interactive computer services and cloned communication networks by Defendants Rod Allen Beckstrom and Chris Malachowsky. This conduct maliciously targeted the Plaintiff's daughter, Iris Beckstrom, from age 15 through age 21, to enforce total social isolation and cause substantial emotional distress. Pursuant to 18 U.S.C. § 2261b1, because this systematic digital harassment directly resulted in the induced death by suicide of Iris Beckstrom on August 8, 2021, the statutory criminal penalty carries a mandatory elevation to life imprisonment.

**2. 18 U.S.C. § 1512 Witness Tampering and Containment of Iris Beckstrom**

The updated referral details the systematic deployment of technical interception networks and environmental tracking parameters designed to execute a total communication blockade. This infrastructure was maliciously utilized to isolate Iris Beckstrom from her father and primary protector following a refused custody ultimatum in Las Vegas, explicitly to silence disclosures and prevent the transmission of underlying physical and sexual abuse metrics to family protectors, law enforcement, and federal judicial forums.

3. Integration of Photographic and Forensic Evidence Exhibits A & B

To bridge the plausibility gap and present an unassailable record of a real person and explicit technical tamper signatures, this filing forensically integrates verified physical media:

- **Exhibit Photographic Attachment A:** Certified physical photographs of Iris Beckstrom establishing her true biological and relational baseline, documenting her strict behavioral barrier against asset Catherine DuBridge, and verifying her presence within the primary household prior to the engineered isolation loop.
- **Exhibit Technical Attachment B:** Certified file directory screen captures unlocked April 2, 2026 documenting the active mfcmapi.exe and hxdsetup.exe data-siphoning arrays buried inside standard software library sub-directories used to execute the long-term communication intercepts.

A certified copy of this amended notice has been delivered directly to the Clerk of the Court to ensure the Presiding Judge is fully informed of the technical, media, and statutory expansion of the active federal criminal tracking file.

Sincerely,

Eric A. Beckstrom, Plaintiff Pro Se
PO Box 10427, Eugene, OR 97440
Lind36ram@proton.me

**Critical Security Notice**

1. **Total Surveillance Risk:** Assume all email, phone calls, and digital transmissions are actively monitored and tracked by the network. Do not send sensitive case data through standard channels.
2. **Environmental Compromise:** The network uses managed assets to target individuals and compromise rooms, properties, or local environments through group operations. No space, age group, or gender is secure; 100 percent saturation for any entity associated with the network.
3. **Presumption of Total Perimeter Compromise:** Recipients of this notice are formally notified: the network deploys immediate, 100 percent mandatory saturation of all newly associated vectors or people; anyone who becomes associated is presumed Compromised, a recurring pattern.

2

**MASTER CASE ADDENDUM B: PHOTOGRAPHS BEFORE IRIS SUFFERED YEARS OF CYBER BULLYING/ISOLATION FUNDED BY A FOUNDER OF THE LARGEST COMPANY IN THE WORLD, IRIS BECKSTROM HUNG HERSELF DUE TO 'SCORCHED EARTH' TACTICS, ONE OF MANY DEATHS**

**DATE:** June 26, 2026

**Formal Referral for Federal Criminal Investigation and Immediate Prosecution**

**To:** The United States Department of Justice | Federal Bureau of Investigation-Portland, Oregon **| U.S. Attorney for the District of Oregon,** Eugene, Oregon

**Subject: Criminal Evidentiary Referral Regarding Case No. 6:26-cv-00920-AA**

**Operational Target: The Beckstrom/Malachowsky Syndicate Enterprise**

**Submission Status:** Pre-Filing Administrative Hold





**Chris Malachowsky's** Beach House Emma, Iris, Sonia Beckstrom & Taj below Chris's Beach House

2030 East Cliff Drive, Santa Cruz, CA; Previously owned by Rod Beckstrom (1998-2019)





Rod Beckstrom, Santa Cruz Harbor Sonia & Soren Beckstrom piloting Emma's Dinghy





**Chris Malachowsky's** Beach House Family Room **Chris Malachowsky's** Beach House Patio

Iris, Soren, Sonia, Linnea(Sweden), Eric Soren & Iris Beckstrom, Taj

Eric Beckstrom designed the Chris Malachowsky/Rod Beckstrom Beach house in 2000

3

**UNITED STATES DISTRICT COURT**
DISTRICT OF OREGON
EUGENE DIVISION
**ERIC A. BECKSTROM,**
Plaintiff,
v.
**ROD ALLEN BECKSTROM, et al.,**
Defendants.
**Case No.: 6:26-cv-00920-AA**
Dated: June 25, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2026, I served a true and correct copy of the foregoing **First Amendment to the Notice of Submission of Formal Criminal Referral to the Federal Bureau of Investigation and the United States Attorney** upon the following named defendants and interested parties by placing a copy in a sealed envelope, with first-class postage fully prepaid, and depositing it in the United States Post Office mailbox at Eugene, Oregon, addressed as follows:

**Rod Allen Beckstrom**
(Insert Last Known Mailing or Residential Address)
Defendant, Pro Se / Principal Coordinator

**Catherine Lee DuBridge**
(Insert Last Known Mailing or Residential Address)
Defendant, Pro Se

**Chris Malachowsky**
(Insert Last Known Mailing or Residential Address)
Defendant / Syndicate Funder

**Michele C. Beckstrom**
(Insert Last Known Mailing or Residential Address)
Defendant / Information Blockade Node

**United States Attorney's Office**
District of Oregon
405 East 8th Avenue, Suite 2400
Eugene, OR 97401
Interested Party / Criminal Intake Division

**Federal Bureau of Investigation**
Portland Division
9109 NE Cascades Parkway
Portland, OR 97220
Interested Party / Public Integrity Intake Unit

Sincerely,

Eric A. Beckstrom
PO Box 10427, Eugene, OR 97440
Email: Lind36ram@proton.me
Forensic Whistleblower / Plaintiff, Pro Se

4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**EUGENE DIVISION**
ERIC A. BECKSTROM, Plaintiff,
v.
ROD ALLEN BECKSTROM, CATHERINE LEE DUBRIDGE, CHRIS MALACHOWSKY, et al., Defendants.
**Case No.:** 6:26-cv-00920-AA
**PLAINTIFF'S AFFIDAVIT OF AUTHENTICATION PURSUANT TO FRE 901**
**Date:** June 26, 2026

I, Eric A. Beckstrom, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following statements are true and correct based upon my personal, direct knowledge:

1. I am the Plaintiff Pro Se in the above-captioned civil matter. I am competent to testify to the facts set forth herein.
2. This Affidavit is submitted to forensically authenticate physical observations and technical evidence regarding the unauthorized handling and duplication of my computing hardware and storage devices on June 25, 2026.
3. On June 25, 2026, my primary case bag—which contained my legal documentation files, core computing units, external storage drives, and associated electronic devices—was separated from my person and direct line of sight for a continuous duration of fifteen (15) minutes while inside an adjacent, closed-door room at an administrative terminal.
4. Upon returning to my secure workstation perimeter, I executed a detailed physical and structural audit of the case containment package and individual hardware units.
5. My audit revealed precise physical drive displacement anomalies within their designated storage compartments. The exact orientation and seating of two secondary external master hard drives had been altered from the baseline configuration I maintained continuously since March 9, 2026.
6. Based upon my technical background, the 15-minute closed-door window and subsequent drive displacement are consistent with the mechanical execution of an un-logged, sector-by-sector duplication of the media drives.
7. The documents attached to the concurrent Notice of Supplemental Record represent accurate, un-altered accounts of my immediate timeline logs, physical inspections, and site conditions observed during this operational intercept.

Sincerely,

Eric A. Beckstrom
PO Box 10427, Eugene, OR 97440
Email: Lind36ram@proton.me
Forensic Whistleblower / Plaintiff, Pro Se

**Critical Security Notice**

1. **Total Surveillance Risk:** Assume all email, phone calls, and digital transmissions are actively monitored and tracked by the network. Do not send sensitive case data through standard channels.
2. **Environmental Compromise:** The network uses managed assets to target individuals and compromise rooms, properties, or local environments through group operations. No space, age group, or gender is secure; 100 percent saturation for any entity associated with the network.
3. **Presumption of Total Perimeter Compromise:** Recipients of this notice are formally notified: the network deploys immediate, 100 percent mandatory saturation of all newly associated vectors or people; anyone who becomes associated is presumed Compromised, a recurring pattern.

5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**EUGENE DIVISION**
ERIC A. BECKSTROM, Plaintiff,
v.
ROD ALLEN BECKSTROM, CATHERINE LEE DUBRIDGE, CHRIS MALACHOWSKY, et al., Defendants.
**Case No.:** 6:26-cv-00920-AA
**PLAINTIFF'S EMERGENCY MOTION FOR A PROTECTIVE ORDER PURSUANT TO FRCP 26(c)**
**EXPEDITED HEARING REQUESTED**
**Dated:** June 26, 2026

Plaintiff Pro Se, Eric A. Beckstrom, hereby moves this Court for an Emergency Protective Order pursuant to Federal Rule of Civil Procedure 26(c). This motion is brought on an emergency, expedited basis to protect the integrity of the active civil discovery record, to shield sensitive proprietary and confidential data from exploitation, and to address an acute, un-logged event of electronic data duplication and device spoliation executed outside the standard parameters of the judicial process.

**I. Concise Statement of Emergency Grounds**

On June 25, 2026, during a scheduled intake meeting at an administrative terminal, Plaintiff's entire case containment package—encompassing primary computing units, secondary external storage drives, legal files, and all associated hardware devices—was removed from Plaintiff's direct line of sight for a duration of fifteen (15) minutes without authorization or logging protocol.

A subsequent physical and structural audit executed at Plaintiff's secure workstation revealed physical drive displacement anomalies within their storage compartments. The 15-minute closed-door separation window was utilized to execute an unauthorized, sector-by-sector duplication of Plaintiff's active litigation files, personal identification records, work products, and account credentials.

Because the primary defendants in this Civil RICO matter, specifically Defendant Rod Allen Beckstrom and Defendant Chris Malachowsky, maintain advanced cybersecurity capabilities, network intercept frameworks, and persistent data-harvesting operations, an immediate judicial protective order is required to prevent this duplicated data from being funneled to the defense steering committees to compromise the active discovery window closing September 4, 2026.

**II. Legal Authority and Statutory Framework**

Federal Rule of Civil Procedure 26(c)(1) provides that a party from whom discovery is sought, or any person affected by discovery actions, may move for a protective order in the court where the action is pending. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

The scope of judicial authority under FRCP 26(c) includes, but is not limited to:

1. Forbidding the disclosure or discovery entirely;
2. Specifying terms, including time and place, for the disclosure or discovery;
3. Prescribing a discovery method other than the one selected by the parties; and
4. Requiring that confidential research, development, or commercial information not be revealed or be revealed only in a specified way.

Good cause for a protective order is established where a party demonstrates that specific, significant prejudice or harm will result if the order is withheld. The unauthorized cloning of an active litigation hardware array containing unredacted work product, corporate registration logs, and strategy indices constitutes the absolute apex of systemic oppression and undue burden, threatening the fundamental constitutional balance of the proceedings.

## III. Required Judicial Remedies and Protective Directives

To neutralize the data theft vector and prevent the weaponization of the duplicated data payloads by the defendants or their corporate insurance counsel, the Plaintiff respectfully requests that the Court enter immediate orders directing the following:

1. **Absolute Suppression of Duplicated Payloads**: Any data, metadata, password cache, legal document, or credential mirrored or extracted from Plaintiff's physical computing hardware on June 25, 2026, is legally suppressed and barred from utilization, reference, or submission by the defense within any civil docket, motion cycle, or deposition proceeding in this matter.
2. **Mandatory Data Segregation and Sealed Custody**: Direct that any entity currently holding the mirrored sector images executed from Plaintiff's drives instantly segregate, password-lock, and place the cloned data streams into a secure, air-gapped repository under strict court-monitored seal, prohibiting any transmission or indexing across commercial or public servers.
3. **Inversion of Data Advantage**: Order that any defense counsel, corporate monitor, or peripheral node who receives any derivative input or narrative tracking insight sourced from the June 25th unauthorized duplication event must immediately file a sworn declaration under penalty of perjury detailing the exact transmission path, the identity of the sender, and the specific metadata parameters received.
4. **Preservation of Adverse Inference**: Establish that the unauthorized separation and duplication of Plaintiff's physical computing hardware constitutes an active, reviewable act of evidence spoliation and fraudulent concealment under the continuous tort doctrine, preserving Plaintiff's right to seek severe evidentiary sanctions under **FRCP 37** up to and including a default judgment for the full $150,000,000 treble damages demand.

## IV. Certificate of Compliance with Conference Requirements

Pursuant to Local Rule 7-1 and FRCP 26(c)(1), the Plaintiff certifies that due to the extreme exigency of the situation, the ongoing technical surveillance risk, and the total digital blockade enforced against his primary channels, a traditional meet-and-confer process with the defense steering committees is impracticable and unsafe. Seeking prior consent from the exact corporate entities and orchestrators asserted to be funding and executing the technical surveillance matrix would cause immediate, irreparable spoliation of the remaining digital records. The filing of this standalone emergency application is the only viable mechanism to preserve the status quo.

## V. Conclusion

The Plaintiff has completely dismantled his monitored primary assets, relocated his legal node to a secure General Delivery box in Eugene, and relies strictly on air-gapped hardware perimeters to enforce his data hygiene. This Court cannot permit an external administrative terminal or state proxy to circumvent the Federal Rules of Civil Procedure by executing an un-logged, off-the-record data theft loop. To protect the integrity of the District of Oregon dockets, the Plaintiff's emergency application must be granted.

Sincerely,

Eric A. Beckstrom, Plaintiff Pro Se
PO Box 10427, Eugene, OR 97440
Lind36ram@proton.me

**Critical Security Notice**

1. **Total Surveillance Risk:** Assume all email, phone calls, and digital transmissions are actively monitored and tracked by the network. Do not send sensitive case data through standard channels.
2. **Environmental Compromise:** The network uses managed assets to target individuals and compromise rooms, properties, or local environments through group operations. No space, age group, or gender is secure; 100 percent saturation for any entity associated with the network.
3. **Presumption of Total Perimeter Compromise:** Recipients of this notice are formally notified: the network deploys immediate, 100 percent mandatory saturation of all newly associated vectors or people; anyone who becomes associated is presumed Compromised, a recurring pattern.

6 **IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**EUGENE DIVISION**
ERIC A. BECKSTROM, Plaintiff,
v.
ROD ALLEN BECKSTROM, CATHERINE LEE DUBRIDGE, CHRIS MALACHOWSKY, et al., Defendants.
**Case No.:** 6:26-cv-00920-AA
**NOTICE OF SUPPLEMENTAL RECORD REGARDING OVERT EVIDENCE SPOLIATION AND PUBLIC INTEGRITY COMPROMISE**
**Dated:** June 26, 2026

Plaintiff Pro Se, Eric A. Beckstrom, hereby submits this formal Notice of Supplemental Record to ensure the Court, the Clerk, and the Presiding Judge, the Honorable Ann L. Aiken, are fully apprised of an independent event involving property security breaches, operational anomalies, and unauthorized data duplication executed on June 25, 2026. This standalone record is indexed under the Unified Bates Sequence within Court Records & Notices, Allocation Range CR-0123 to CR-0125.

## I. The June 25 Portland Field Office Ingress Node

1. **The Guardhouse Perimeter Lock**: Arriving at 09:00 AM for a scheduled 10:00 AM meeting, the Plaintiff remained inside his vehicle until 09:30 AM. Upon approaching the guardhouse node, situated 100 feet from the main building infrastructure, an electronic audio directive ordered an immediate return to the vehicle. The facility utilized opaque, electrically switchable glass that entirely prevented interior visibility.
2. **The Non-Standard Security Perimeter**: Upon gate clearance, entry was routed through a temporary, 90-degree walkthrough metal detector configuration lacking an X-ray conveyor machine or standard baggage scanning bay. A physical pocket clearance was executed, including an anomalous physical inspection of the Plaintiff's wallet.
3. **The 15-Minute Separation Vector**: Under the pretext of a standard security check, the gate guard removed the Plaintiff's primary case bag containing his active forensic legal documents, personal credentials, and physical media storage devices. The guard routed the entire containment package—including the Plaintiff's legal files, primary computing units, external storage units, and all operational hardware devices—into an adjacent, closed-door room. This marked the first and only instance since March 9th that the master case files, along with the physical computing hardware and devices, were removed from the Plaintiff's direct line of sight.

## II. Mechanical Execution of the Tactical Diversion Loop

1. **The Intake Agent Intercept**: Simultaneously with the bag and hardware removal, two male intake officers entered the open perimeter space. They initiated an aggressive, low-level pedigree interrogation demanding name and basic baseline metrics, completely ignoring the fact that the Plaintiff had already submitted his driver's license data to the guard perimeter the preceding day.
2. **The Manufactured Pedigree Baseline**: Within 10 minutes of beginning this aggressive routine, the officers abruptly pivoted and began discussing the Plaintiff's brother and the exact details of where the Plaintiff lived. This rapid transition establishes that the first 15 minutes of basic questioning was entirely manufactured theater. The intake terminal possessed full advance knowledge of exactly who the Plaintiff was, what assets he held, and what files and devices were inside the building.

3.**The Evidentiary Evasion**: When presented with the stamped copy of the Notice of Submission of Formal Criminal Referral, lodged the prior day with the Oregon Federal Civil Clerk, the agents executed a stance of absolute technical ignorance. Both individuals explicitly claimed to have zero knowledge of cybersecurity terminology when asked about the embedded data-siphoning firmware payloads mfcmapi.exe and hxdsetup.exe. They refused to accept or index the active 83-exhibit master data binder unless a formal intake script was initiated, a procedure they concurrently claimed they did not execute at that location.

**III. Involuntary Disclosures and Narrative Inversion Scripts**

1.**The Missing Persons Intercept**: Bypassing their stated status as blind intake personnel, the agents asked the Plaintiff if he had recently contacted his brother, Defendant Rod Allen Beckstrom. They explicitly stated that Rod was worried and had initiated a missing persons report.

2.**The San Francisco Police Override**: This disclosure directly linked back to a fraudulent report filed on April 27th. The San Francisco Police Department had previously vouched for the Plaintiff, issuing an official report within 12 hours confirming well-being, advising the filing of a protective restraining order, and explicitly expressing frustration with the Los Gatos municipal channel. The orchestrator filed the report because the Plaintiff had emailed local Los Gatos authorities to log his departure; Rod intercepted that message in real-time as the Plaintiff was still utilizing the compromised laptop infrastructure.

3.**The Inversion to Family Therapy**: The agents shifted from a dismissive posture to an aggressive family reunification narrative script, explicitly advising the Plaintiff to call the primary Civil RICO defendant. This advice was pushed despite the Plaintiff clarifying that he is the active pro se investigator in a $150,000,000 treble damages racketeering action against that exact relative.

4.**The Crisis Theater Protocol**: At the 40-minute mark, two unauthorized female personnel exhibiting non-professional, counter-culture presentations entered the intake space. Without prior contact or baseline review, they initiated a synchronized verbal loop stating that they heard the Plaintiff was in crisis and looked like he was in crisis. This performative intervention was deployed to construct an artificial record of psychiatric instability to counteract the empirical data delivery. The Plaintiff neutralized the intervention by delivering an absolute behavioral flatline, explicitly rejecting their counseling bait.

**IV. Post-Incident Forensic Drive Audit**

1.**Physical Drive Anomalies**: Upon returning to his secure workstation perimeter, the Plaintiff executed a physical and structural audit of his case baggage. The orientation and placement of the two secondary external master hard drives had been altered within their designated compartments.

2.**The Data Theft Vector**: The 15-minute closed-door separation window was utilized to execute an un-logged, unauthorized sector-by-sector duplication of both external drives and all associated computing hardware devices. The network now possesses a duplicated mirror of the Plaintiff's complete legal briefs, personal identification records, historical data maps, and operational accounts.

3.**The Loss of Institutional Neutrality**: This occurrence establishes that the Portland intake node is not functioning as an independent investigative agency, but has been co-opted as an active proxy to execute technical spoliation and mirror data payloads back to primary syndicate financer Chris Malachowsky.

**V. Conclusion and Notice of Evidentiary Preservation**

The June 25th unauthorized hardware and data duplication event is treated strictly as a reviewable Overt Act of Fraudulent Concealment and Evidence Spoliation within the active federal civil record. The Master Index is updated to include Exhibit Technical Attachment C: The June 25, 2026 FBI Intake Intrusion Log, documenting the physical displacement metrics of the hardware, the 15-minute closed-door timeline, and the operational profile of the terminal to permanently preserve the event on the docket.

Sincerely,

Eric A. Beckstrom, Plaintiff Pro Se
PO Box 10427, Eugene, OR 97440
Lind36ram@proton.me

**Critical Security Notice**

1. **Total Surveillance Risk:** Assume all email, phone calls, and digital transmissions are actively monitored and tracked by the network. Do not send sensitive case data through standard channels.
2. **Environmental Compromise:** The network uses managed assets to target individuals and compromise rooms, properties, or local environments through group operations. No space, age group, or gender is secure; 100 percent saturation for any entity associated with the network.
3. **Presumption of Total Perimeter Compromise:** Recipients of this notice are formally notified: the network deploys immediate, 100 percent mandatory saturation of all newly associated vectors or people; anyone who becomes associated is presumed Compromised, a recurring pattern.

7

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

**ERIC A. BECKSTROM,**
Plaintiff,

v.

**ROD ALLEN BECKSTROM, et al.,**
Defendants.
**Case No.: 6:26-cv-00920-AA**

**NOTICE OF LODGING OF STATUTORY REFERENCE MATRIX AND ASSET DIRECTORY IN SUPPORT OF FIRST AMENDMENT TO THE NOTICE OF SUBMISSION OF FORMAL CRIMINAL REFERRAL**

Dated: June 25, 2026

Plaintiff Pro Se, Eric A. Beckstrom, hereby provides formal notice to the Court and the Clerk of the Court that Exhibit 49B, establishing the explicit state statutory baselines, federal racketeering predicates, and master property registries supporting Case No. 6:26-cv-00920-AA, has been delivered and physically lodged with the Clerk's office on this date.

These materials are directly integrated into, and explicitly support, Exhibit 49B, the First Amendment to the Notice of Submission of Formal Criminal Referral, and the active Civil RICO record:

### 1. Administrative Assertion of Coordinated Litigation Manipulation

The lodged filing details a forensic timeline documenting how a localized physical and narcotic assault against the Plaintiff's late minor daughter, Iris Beckstrom, was systematically intercepted and weaponized by Defendant Rod Allen Beckstrom. The enterprise executed this medical and legal interdiction precisely seven (7) days prior to a critical Maine divorce trial to fracture the Plaintiff's defense, destroy the credibility of a key witness, and compel the forced forfeiture of the Maine real estate asset.

### 2. Statutory Compliance and Reference Index

To anchor the multi-jurisdictional violations within clear judicial boundaries, the exhibit outlines three core statutory pillars:

- **California Penal Code Section 285 (Incest)**: Establishes the felonious framework governing sexual acts between individuals within defined degrees of biological consanguinity. Under the law, consent thresholds are entirely non-applicable as a defense, and heightened mandatory reporting guidelines are activated if a minor under 18 is involved.

- **18 U.S. Code § 1591 (Sex Trafficking)**: Outlines federal thresholds regarding the recruitment, harboring, or maintaining of a person for commercial sex acts. The statutory text dictates that if an individual has not attained 18 years of age, the legal element of force, fraud, or coercion is not required to establish the federal violation.
- **18 U.S. Code § 1962 (Civil RICO)**: Defines unlawful activities involving the operation, control, or investment of capital derived from a pattern of racketeering activity into an enterprise affecting interstate commerce, requiring at least two distinct predicate acts within a ten-year window.

### 3. Thematic Evidence Overview and Master Real Property Directory

The exhibit explicitly links the documented behavioral tracking timelines to the physical boundaries, parcel registries, and chains of title for five specific asset nodes:

- **Asset Node 1**: 102 Alta Heights Court, Los Gatos, CA (2022-shared home)
- **Asset Node 2**: 249 San Mateo Ave., Los Gatos, CA (2016-shared home)
- **Asset Node 3**: 224 4th Avenue, Santa Cruz, CA (1993 family beach house)
- **Asset Node 4**: 2030 East Cliff Drive, Santa Cruz, CA (1998 beach house property)
- **Asset Node 5**: 19956 Charters Ave., Saratoga, CA (1985 ancestral home)

The text outlines that Catherine Lee DuBridge systematically utilized these residential staging venues to execute high-density, multi-person events to distribute shared legal liabilities, ensure absolute non-disclosure among participants, and minimize the risk of state board audits or public exposure.

### 4. Statement of Telemetry Intercept and Delayed Discovery Metrics

The lodged exhibit supports the comprehensive Statement of Delayed Discovery within the active lawsuit. The continuous operation of steganographic data-siphoning arrays (mfcmapi.exe, hxdsetup.exe) across all primary devices, vehicles, and communication channels kept the Plaintiff's perimeter in a state of continuous, forced chaos. This background feedback loop was calculated to keep a high-capacity analytical memory off-balance, preventing separate data components from being connected in real time.

The structural failure of this tracking machine occurred only when the Plaintiff initiated a complete scorched-earth data protocol and went entirely dark between March 9, 2026, and April 3, 2026. This data vacuum allowed the Plaintiff to bypass the 24/7 technical interference, execute a deep computer sector audit, and unlock his complete chronological memory bank. The statute of limitations is thus fully tolled under the Doctrine of Fraudulent Concealment.

All materials have been securely packaged, indexed under penalty of perjury, and placed in the custody of the Court Clerk to ensure preservation for the active judicial record.

Sincerely,

Eric A. Beckstrom
PO Box 10427, Eugene, OR 97440
Email: Lind36ram@proton.me
Forensic Whistleblower / Plaintiff, Pro Se

**Critical Security Notice**

1.**Total Surveillance Risk:** Assume all email, phone calls, and digital transmissions are actively monitored and tracked by the network. Do not send sensitive case data through standard channels.
2.**Environmental Compromise:** The network uses managed assets to target individuals and compromise rooms, properties, or local environments through group operations. No space, age group, or gender is secure; 100 percent saturation for any entity associated with the network.
3.**Presumption of Total Perimeter Compromise:** Recipients of this notice are formally notified: the network deploys immediate, 100 percent mandatory saturation of all newly associated vectors or people; anyone who becomes associated is presumed Compromised, a recurring pattern.

8

**UNITED STATES DISTRICT COURT**
DISTRICT OF OREGON
EUGENE DIVISION
**ERIC A. BECKSTROM,**
Plaintiff,
v.
**ROD ALLEN BECKSTROM, et al.,**
Defendants.
**Case No.: 6:26-cv-00920-AA**
**CERTIFICATE OF SERVICE**
**Dated:** June 26, 2026

I hereby certify that on June 26, 2026, I served a true and correct copy of the foregoing **Notice of Lodging of Physical and Non-Documentary Exhibits** upon the following named defendants and interested parties by placing a copy in a sealed envelope, with first-class postage fully prepaid, and depositing it in the United States Post Office mailbox at Eugene, Oregon, addressed as follows:

**Rod Allen Beckstrom**
911 Capitola Avenue, Capitola, CA 95010
Defendant, Pro Se / Principal Coordinator

**Catherine Lee DuBridge**
224 4th Avenue, Santa Cruz, CA 95062
Defendant

**Chris Malachowsky**
2030 East Cliff Drive, Santa Cruz, CA 95062
Defendant / Syndicate Funder

**Michele C. Beckstrom**
88 Washington Street, Camden, ME 04843
Defendant / Information Blockade Node

**United States Attorney's Office**
District of Oregon
405 East 8th Avenue, Suite 2400
Eugene, OR 97401
Interested Party / Criminal Intake Division

**Federal Bureau of Investigation**
Portland Division
9109 NE Cascades Parkway
Portland, OR 97220
Interested Party / Public Integrity Intake Unit

Sincerely,

Eric A. Beckstrom
PO Box 10427, Eugene, OR 97440
Email: Lind36ram@proton.me
Forensic Whistleblower / Plaintiff, Pro Se