FILED 02 JUL '26 09:53 USDC-ORE

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**EUGENE DIVISION**

ERIC A. BECKSTROM, Plaintiff,

v.

ROD ALLEN BECKSTROM, CATHERINE LEE DUBRIDGE, CHRIS MALACHOWSKY, et al., **Defendants.**

**Case No.: 6:26-cv-00920-AA**

**PLAINTIFF'S INTRODUCTORY STATEMENT OF COMMON SCHEME AND DESIGN**

**Filing Date:** July 1, 2026

## I. Statutory Framework & Enterprise Definition

The Plaintiff Pro Se submits this formal Statement of Common Scheme and Design to map the unified, horizontal, and vertical architecture of the racketeering enterprise operating under the active Civil RICO and TVPRA dockets. Under long-standing federal conspiracy doctrines, a multi-defendant syndicate cannot insulate its individual actors by claiming separate, disconnected actions. The law recognizes a single, coordinated entity where all overt acts are legally imputed to every participant who furthers the common design.

The enterprise is defined by a permanent division of labor designed to execute total environmental capture, continuous data exfiltration, and the systematic containment of moral witnesses:

1. **The Financing and Underwriting Tier:** Managed and capitalized continuously by technology executive Chris Malachowsky, providing the corporate capital, high-status shielding, and real estate resources necessary to buy local immunity and fund long-term operations.
2. **The Technical Command Tier:** Directed by Defendant Rod Allen Beckstrom, leveraging military-grade infrastructure expertise as former Director NCSC/DHS and former CEO ICANN to implement steganographic software payloads, endpoint device clones, and remote data-siphoning arrays.
3. **The Proximal Infiltration Node:** Executed by Defendant Catherine Lee DuBridge, functioning as a non-discriminatory, boundaryless behavioral asset deployed directly into the Plaintiff's domestic perimeter to maintain continuous physical access and lower analytical defenses.
4. **The Information Blockade Tier:** Anchored by regional family and municipal cogs, including Defendant Michele C. Beckstrom, executing coordinated communication cut-offs, deliberate document purges, and administrative misdirection to isolate the target from critical data fields.

## II. The Mechanics of the Horizontal Complicity Mesh

The structural preservation of this enterprise over an 11-year operational lifecycle relies entirely on an industrialized model of Horizontal Complicity. To neutralize the risk of a high-capacity analytical target uncovering the background data siphoning, the syndicate executed a multi-tiered saturation protocol:

[ THE FINANCING CORE ] (Chris Malachowsky Underwrites Strategic Overhead)

▼

[ TECHNICAL COMMAND HUB ] (Rod Beckstrom Coordinates Cloned Telemetry Loops)

▼

[ REGIONAL FRANCHISE NODES ] (Gyms, Contractors, Neighbors Integrated via Spectacle)

▼

[ UNIVERSAL OMERTÀ MATRIX ] (Shared Personal/Social Liability Locks Local Silence)

•**Mass Leveling via Non-Discrimination:** The enterprise systematically routed thousands of ordinary, unremarkable community members—spanning active construction crews, gym members, local bank employees, and elderly residents, minors, male and female and large groups—directly into a shared, boundaryless environment managed by the primary asset. By treating all participants as interchangeable cogs, the system prevented any single node from obtaining distinct relational leverage, while establishing a massive wall of deniability across the local ecosystem.

•**The Mutual Blackmail Insurance:** Every ordinary node that accepted access to the boundaryless spectacle signed their own operational waiver. The network did not require centralized enforcement; the participants' own intense fear of public, domestic, or financial ruin generated an unbreakable community-wide Omertà. They remained completely silent while witnessing the systematic digital harassment, forced real estate evictions, and witness isolation protocols that led directly to the wrongful death by hanging of Plaintiff's 21-year-old daughter, Iris Mari Beckstrom.

**III. Invalidation of Defensive Pretexts**

Pursuant to federal mass tort doctrines and the Restatement Second of Torts Section 876, the standard defensive pleadings prepared by corporate defense steering committees are legally invalidated under two core principles:

1. **The Doctrine of Consent Procured by Fraud:** Any claim asserting that local cogs or municipal personnel acted under valid authorization from a partner, spouse, or relative is void. Because the primary coordinators utilized active deception, cloned messaging payloads, and hidden background utilities like mfcmapi.exe and hxdsetup.exe to conceal the tracking grid, no true legal consent ever existed.
2. **Transferred Culpability for Systemic Spoliation:** Physical entry into a private domain is not a prerequisite for liability. Any peripheral actor who provided substantial assistance—including the Portland intake terminal executing a temporary guardhouse hardware separation loop or county crisis workers from Project Respond staging a synchronized crisis theater narrative—functions as a direct co-conspirator in the underlying fraud and evidence spoliation.

**IV. Conclusion and Application of the Strategic Void**

The Plaintiff Pro Se continues to implement a strict air-gapped operational footprint, submitting all pleadings exclusively via hard-copy delivery and United States Registered Mail to isolate the master record from the Ghost User network. By completely refusing emotional confrontation, bypass options, or financial settlement terms, the Plaintiff applies an absolute behavioral counter-modulation that starves the tracking algorithms of interactive data. The issuance of over 900 physical litigation hold letters directly across all structural, tech corporate, and local service perimeters systematically paralyzes the upward and downward cash flows, forcing the 400 named defendants into direct accountability under the light of the public record.

Sincerely,

Eric A. Beckstrom, Plaintiff Pro Se
P.O. Box 10427, Eugene, OR 97440